UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAVEL POLINOVSKY, and ILONA )
POLINOVSKY, and HANS-PETER )
BAUMEISTER, on behalf of themselves and )
all others similarly situated, )
      Plaintiffs, )
       ) Case No. 11 cv 780
v. )
       ) Judge Sharon Johnson Coleman
DEUTSCHE LUFTHANSA, AG, )
      Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Pavel and Ilona Polinovsky ("the Polinovskys") and Hans-Peter Baumeister filed this putative class action lawsuit against defendant Deutsche Lufthansa AG ("Lufthansa") for its alleged failure to comply with Regulation No. 261/2004 of the European Parliament and European Council ("EU 261" or "the Regulation"). The Regulation requires airlines to compensate passengers for certain delayed or cancelled flights departing from or arriving in the European Union. Their complaint alleges breach of contract and violation of EU 261. This Court previously held that EU 261 is expressly incorporated in Lufthansa's Conditions of Carriage. *Polinovsky v. Deutsche Lufthansa AG*, 2012 WL 1080415 (N.D.Ill. Mar. 30, 2012). Lufthansa now moves for summary judgment against the Polinovskys.[1] For the following reasons, Lufthansa's motion is denied.

**Background**

The Polinovskys are residents of Illinois and were confirmed passengers on British Airways flight 226 from Atlanta to London scheduled to depart December 17, 2010, with a

---

[1] Lufthansa has also moved to dismiss Count II of plaintiffs' complaint. A separate decision granting Lufthansa's motion to dismiss Count II is being issued concurrently with this Opinion and Order. Therefore, this ruling addresses Lufthansa's motion for summary judgment as to Count I of plaintiffs' complaint as alleged by the Polinovskys.

1

connecting flight to Warsaw Poland. Prior to departure, the Polinovskys were notified by email that Flight BA 226 was cancelled. The Polinovskys went to the British Airways ticket counter in Atlanta and were rebooked on the following flights:

- Delta Flight DL 1951 from Atlanta to Miami, departing December 18, 2010 at 1:30 p.m.
- Lufthansa Flight 467 departing Miami departing on December 18, 2010 at 6:25 p.m., arriving Dusseldorf, Germany on December 19, 2010 at 9:15 a.m.
- Lufthansa Flight LH 5726 departing Dusseldorf on December 19, 2010 at 10:15 a.m., arriving Warsaw, Poland 12:05 p.m.

The Polinovskys traveled from Atlanta to Miami without incident. Lufthansa Flight LH 467 out of Miami was delayed and did not arrive in Dusseldorf until 10:29 a.m. As a result, the Polinovskys missed their connecting flight (Flight LH 5726) to Warsaw. The Polinovskys were rebooked on Flight LH 3024 to Warsaw scheduled to depart later that day. Flight LH 3024 was cancelled thereafter. The next available flight to Warsaw was not for another two days. The Polinovskys ultimately traveled by train to their final destination.

**Legal Standard**

Summary judgment is appropriate if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

**Discussion**

Lufthansa advances two arguments in support of their motion for summary judgment against the Polinovskys. First, Lufthansa argues that the only valid, enforceable contract the Polinovskys entered into was with British Airways. Second, Lufthansa argues that the delay in transportation was caused by "extraordinary circumstances" and that it took all reasonable measures to avoid the delay. The Court notes that Plaintiffs provide notice that they may withdraw the Polinovskys as proposed class representatives as their flights may fall outside the class definition. (Dkt. #154, Pl.'s Resp. at p. 2.)

**1. The Polinovskys contract with Lufthansa**

Lufthansa argues that the only valid contract the Polinovskys entered into for their roundtrip transportation between Atlanta and Warsaw was with British Airways and, therefore, only British Airways' Conditions of Carriage apply to their travel.[2] Moreover, Lufthansa maintains British Airways was obligated to transport the Polinovskys to Warsaw even after Flight BA 226 was cancelled.

In the event of a flight delay or cancellation, British Airways' Conditions of Carriage state that the airline may arrange for a flight to be operated by another aircraft, another airline or both. (Dkt. #124-2, Ex. A, §9(b)(2).) Indeed, after Flight BA 226 was cancelled, British Airways issued tickets to the Polinovskys on Delta Flight DL 1951 and Lufthansa Flights LH 467 and LH 5726. When British Airways issues a ticket for a passenger to be carried on another carrier, it does so "only as agent for that carrier." (Dkt. #124-2, Ex. A, §15(g)(1).)

According to Lufthansa, the act of involuntarily re-routing the Polinovskys on Lufthansa Flight 467 did not terminate the contract between British Airways and the Polinovskys, nor did it

---

[2] EU 261 is not incorporated into British Airways' Conditions of Carriage. *See Polinovsky v. British Airways PLC*, 2012 WL 1506052, *3 (N.D. Ill. Mar. 31, 2012) ("[t]here is no question that [British Airways'] Conditions of Carriage do not expressly incorporate EU 261 and no provision of the contract ever mentions this regulation").

3

create a contract between Lufthansa and the Polinovskys. In support, Lufthansa points to the unique British Airways code "125" – rather than Lufthana's code – present on each travel document issued to the Polinovskys. (Dkt. #124-2, Ex. C; Dkt. #124-4, Ex. N; Dkt. #124-5, Ex. EE, FF.) The Polinovskys do not dispute that the British Airways code appears on their travel documents. Instead, they insist that the Lufthansa tickets issued by British Airways in their capacity as an agent for Lufthansa constitute a valid contract between Lufthansa and the Polinovskys pursuant to Lufthansa's Conditions of Carriage.

Lufthansa's Conditions of Carriage state that a ticket "issued by us or on our behalf…includes the Conditions of Contract" (Dkt. #154-2, Ex. 1, §1.) Lufthansa's Conditions of Contract are "those statements contained in or delivered with your Ticket…and which incorporate by reference these Conditions of Carriage." (*Id.*) Lufthansa cannot dispute that its Conditions of Carriage expressly incorporate EU 261, as this Court has previously so held. *Polinovsky*, 2012 WL 1080415 (N.D. Ill. Mar. 30, 2012). Moreover, Lufthansa cannot controvert that, by the terms of its own Conditions of Carriage, a ticket – whether issued by Lufthansa or on its behalf – constitutes "prima evidence of the contract of carriage between [Lufthansa] and the passenger." (Dkt. #154-2, Ex 1, §3.1.5.) *See also Pence v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 17 (1st. Dist. 2010) ("a contractual relationship between passenger and carrier begins when the passenger has presented himself at the proper place to be transported with the intention of becoming a passenger and is then either expressly or impliedly accepted by the carrier for transportation"). Thus, Lufthansa's argument fails.

**2) Extraordinary circumstances**

Lufthansa also argues that it is not obligated to compensate the Polinovskys because the Polinovksys' delay was caused by extraordinary circumstances. The Regulation provides that the

cancellation of a flight is not compensable when the airline can "prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken." EU 261 Preamble ¶14. Such circumstances may exist "in cases of political instability, meteorological conditions incompatible with the operation of the flight, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating air carrier." *Id*.

Extraordinary circumstances should be deemed to exist where "the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay, an overnight delay, or the cancellation of one or more flights by that aircraft, even though all reasonable measures had been taken by the air carrier concerned to avoid the delays or cancellations." *Id*. ¶15. Thus, "[a]n operating air carrier shall not be obligated to pay compensation…if it can prove that the cancellation could not have been avoided even if all reasonable measures had been taken." *Id*. Art. 5(3); Cases C-402/07 & C-432/07, *Sturgeon v. Condor Flugdienst GmbH*, 2009 E.C.R. I-10923 (compensation is not limited to passengers affected by flight cancellations but also applies to passengers affected by a long or overnight delay).

"[S]ince not all extraordinary circumstances confer exemption, the onus is on the [defendant] to establish, in addition, that they could not on any view have been avoided by measures appropriate to the situation." Case C-549/07, *Wallentin-Hermann v. Alitalia-Linee aeree Italiane SpA*, 2008 E.C.R. I-11061, at ¶40. To meet this burden, a defendant must show that it took "all precautions that in sum are appropriate to the risk, i.e. measures reasonably available to the defendant and reasonably calculated, in culmination, to prevent the subject loss." *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A., Operadora, Sociedad Unipersonal*, 2012

5

WL 5499426 at *4 (N.D. Ill. Nov. 9, 2012) (quotations and citations omitted). Lufthansa need not take every possible precaution, but "must show that it took a technically and economically viable measure that was reasonably calculated" to avoid the Polinovksys' delay. *Id*.

Flight LH 467 departed Miami 1 hour 32 minutes late. (Dkt. #125, Def.'s SOF ¶40; Dkt. #156, Pl's SOF ¶40.) The record shows Flight LH 467 was delayed by 1 hour 8 minutes due to the late arrival of the inbound aircraft (Flight 466). (Ex. O at LH_000202; Ex. 9 at LH_000200.) According to Lufthansa, the inbound aircraft was delayed in Dusseldorf due to weather conditions which required the aircraft to be de-iced. (Dkt. #125, Def.'s SOF ¶¶ 30, 38.) Lufthansa asserts that de-icing the aircraft was reasonable and necessary because of safety risks posed by inclement weather. Lufthansa acknowledges that Flight LH 467 also experienced an additional 24 minute delay to an "unknown cargo issue." (Dkt. #124, Def.'s Mot. at p. 16, fn 12; Ex. O at LH_000202; Ex. 9 at LH 000197.) Lufthansa argues it sought to minimize the Polinovskys' delay by revising Flight LH 467's flight plan which shortened the flight time by 18 minutes. (Dkt. #125, Def.'s SOF ¶41; Dkt. #156, Pl.'s SOF ¶41.) Lufthansa also alleges it reserved seats for the Polinovskys on an alternate flight to Warsaw (Flight LH 3024) prior to arriving in Dusseldorf. (Dkt. #124, Def.'s Mot. at p. 19.)

The Polinovskys concede that Flight LH 467 was delayed, in part, due to the late arrival of the inbound aircraft but argue that the additional 24 minute delay evidence that Flight 467's delay was not due to extraordinary circumstances nor does it show Lufthansa took all reasonable measures to avoid Flight LH 467's delay. The Polinovskys claim their connecting flight to Warsaw (Flight LH 5726), originally scheduled to depart at 10:15 a.m., was also delayed and did not depart until 10:53 a.m. (Dkt. #156, Pl's Stmt. of Add'l Facts ¶11.) Consequently, but for the "unknown cargo issue," the Polinovskys maintain they would have made their connecting flight

to Warsaw (Flight LH 5726). The Polinovskys also contend that de-icing delays are foreseeable and Lufthansa could have taken reasonable steps to prevent risks of secondary delays. *See Eglitis v. Latvijas Republikas Ekonomikas Ministrija*, 2011 E.C.R. I-00000.

The 1 hour 34 minute delay of Flight 467 – attributed to late arrival and de-icing of inbound aircraft as well as an unknown cargo issue – does not itself constitute an extraordinary circumstance. The record does show that Dusseldorf was experiencing intermittent snowfall on December 18, 19 and 20, that air traffic control closed Dusseldorf runways from 3:00 to 4:50 p.m. on December 19 and Lufthansa ultimately cancelled 44 flights that day. (*See generally*, Dkt. #124-5, Ex. AA, BB, HH.) Indeed, winter weather conditions affecting London's Heathrow airport during this time period have been found to constitute extraordinary circumstances. *See Kruger v. Virgin Atl. Airways, Ltd.*, 2013 WL 5502866 (E.D.N.Y. Sept. 30, 2013) *reconsideration denied*, 2013 WL 6795251 (E.D.N.Y. Dec. 23, 2013). While Lufthansa disputes the Polinovskys assertion that they would have made their connecting flight but-for the additional 24 minute delay, the Court notes that Lufthansa provides no meaningful explanation for the "unknown cargo issue" Flight 467 experienced in Miami or whether it could have been avoided. While it may be that the conditions at Dusseldorf airport on December 19, 2010 constitute extraordinary circumstances, construing the facts in the light most favorable to the Polinovskys, issues of fact exist as to whether Lufthansa took all reasonable measures to avoid the delay of Flight 467 and whether the Polinovskys' delay was unavoidable even if Lufthansa had taken all reasonable measures. *See Iberia*, 2012 WL 5499426 at *6 (denying summary judgment where "rational jurors could differ as to whether the airline took all reasonable measures to avoid the delay").

**Conclusion**

For the foregoing reasons, Lufthansa's motion for summary judgment against Polinovskys is denied.

IT IS SO ORDERED.

<u>March 14, 2014</u>
Date:

                                                                           Sharon Johnson Coleman
                                                                        United States District Judge